UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION AT ASHLAND**

| | |
|---|---|
| CYNTHIA DAWN NOBLE, ) | |
| ) | |
| Plaintiff, ) | Action No. 0:16-CV-00004-JMH |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| NANCY J. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security ) | |
| ) | |
| Defendant. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 11, 12) on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

   1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

   2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1]   These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II.

In October 2012, Plaintiff protectively applied for disability insurance benefits pursuant to Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-33. Her claim was initially denied on January 2013, then upon reconsideration on February 11, 2013. A written request for hearing was filed on March 11, 2013. On June 18, 2014, a video hearing was convened before Administrative Law Judge Michele M. Kelley ("ALJ"). Plaintiff's application was again denied in the ALJ's decision dated July 2,

2014, and the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the final agency decision for the purposes of judicial review. *See* 20 C.F.R. § 422.210(a).

### III.

Plaintiff was 54 years old at the time she allegedly became disabled on August 17, 2012, and 55 years old at the time of the Commissioner's July 2, 2014 final decision that is now before the Court (Tr. 197). Plaintiff has a high school education and previously worked as an administrative assistant, bank teller and loan processor (Tr. 32, 202). In her application materials, Plaintiff alleged she is unable to work due to right wrist pain and her right leg being shorter than her left (Tr. 201).

Plaintiff has a remote history (approximately five years before her alleged disability onset date) of sustaining a broken right arm in a July 2007 automobile accident (Tr. 261). She was treated at Our Lady of Bellefonte with an impression of a fractured distal radius provided and surgery was performed the following day (a closed reduction and percutaneous pinning of the right wrist with a cast) by Michael Goodwin, M.D. (Tr. 307). Although Plaintiff subsequently complained of aching, throbbing, and dropping things, Dr. Goodwin noted that x-rays showed the fracture was healing "quite well", movement of her right arm had improved with therapy, and she was released to full activities in December 2007 (Tr. 304).

In December 2012, Kip Beard, M.D., saw Plaintiff for a consultative physical examination (Tr. 368-373; *duplicated at* Tr. 374-379). Dr. Beard noted that Plaintiff reported her chief complaints to be right wrist problems and that her right leg was shorter than her left leg. The December 2012 examination revealed that, although Plaintiff ambulated with a mildly limping gait, she was able to able to stand unassisted and did not require a handheld assistive device. Further, Dr. Beard noted that Plaintiff appeared comfortable while seated and while supine. Dr. Beard's physical examination of Plaintiff revealed that range of motion of the fingers was normal and that she was able to pick up coins with either hand and write with the dominant hand without difficulty. On neurological examination, Dr. Beard noted weakness in Plaintiff's right grip strength that was graded at 4/5 and observed other issues with respect to her hand. Dr. Beard opined that Plaintiff would be subject to limitations as to repetitive handling or repetitive use of the hands such as in data entry, as well as to prolonged standing, ambulation, squatting, walking on steps, and heavy carrying (Tr. 368-373).

Dr. Beard completed a medical source statement in June 2013, opining that Plaintiff could perform light exertional work with a few exertional, manipulative, postural, and environmental limitations (Tr. 380-385). Notwithstanding Dr. Beard's earlier observation that Plaintiff's range of motion in her fingers was

4

normal and she was able to pick up coins with either hand without difficulty, Dr. Beard opined that Plaintiff could only occasionally handle, finger, and feel. Dr. Beard also opined that Plaintiff was limited to sitting no more than four hours, standing two hours, and walking two hours in an eight-hour workday despite previously observing that Plaintiff sat comfortably during her examination, and that she had only a mildly limping gait, a mild degree of difficulty arising from a chair and stepping up to the exam table and mild right hip pain on range of motion testing.

By contrast, Jack Reed, M.D., a state agency medical consultant, opined that Plaintiff could perform medium exertion level work with additional manipulative and environmental limitations, including an ability to push and/or pull (including operation of both hand and foot controls) commensurate with Plaintiff's ability to lift and carry; sit about six hours and stand or walk about six hours in an eight-hour workday; unlimited reaching in any direction (including overhead) with limited handling and fingering with her right upper extremity; and that Plaintiff should avoid concentrated exposure to vibration.. Dr. Reed explained his residual functional capacity opinion by noting that although flexion was limited to 90 degrees, normal range of motion was otherwise demonstrated, that right grip strength was graded at 4/5 (that would reasonably account for his opinion regarding limited handling and fingering with the right upper

5

extremity), and that Plaintiff was able to walk on heels and toes, perform tandem gait, and could squat (with reported hip pain) and arise from a squat (Tr. 97-98).

Plaintiff testified that the primary reason she was unable to work was due to an injury to her right hand and a hip injury that resulted in one leg being shorter than the other (Tr. 14). She said that she also had problems with her left hand as well (Tr. 15). She testified that she has pain in her wrist, elbow, and fingers, and that she has nerve damage in her hand, that two of her fingers stay numb most of the time, and that her hand swells. She said that she could not tolerate pain medication (Tr. 16) and that she wraps her arm and uses a heating pad for the pain. Plaintiff testified that she wears a brace on her right wrist but that a doctor had not prescribed it (Tr. 16). She said that she had trouble holding on or grasping onto things and cannot lift anything heavy. She also said that she could not pick up money with her right hand (Tr. 17). She testified that she can sit for twenty to twenty-five minutes and stand for ten minutes at a time. She said that she could only type for 15-20 minutes (Tr. 17). She testified that she had one leg shorter than the other and wears a built-up shoe (Tr. 18). She testified that she did not drive very much, no more than two or three times a week (Tr. 15, 20) and that driving irritates her arm and hand pain, as does rainy weather. She said that she could only lift and carry milk with her right

6

arm and no more than two pounds with her left arm (Tr. 19-20). She then indicated that she had made a mistake and that she could only lift two pounds with her right hand and did not have problems lifting with her left had if it was not too heavy (Tr. 20). She said that she could stand for no more than ten minutes at a time and walk no more than 15 minutes at a time (Tr. 18-19). She said that she cannot do zippers and buttons (Tr. 24) and wears only pull-on pants and shirts. She testified, as well, that she plans out which days during the week she will wash her hair or shave her legs and that, if she has too much pain in her hand or elbow, that she simply stands under the water and hopes to get clean enough. She testified that, while she can wash clothes and cook (Tr. 24), she is unable to sweep, mop, or vacuum and that she does no yard work. She said that she takes a nap every day and watches television or reads (Tr. 25).

A vocational expert, Ellen C. Jenkins, testified at the June 18, 2014 administrative hearing (Tr. 31-40) consistently with the Dictionary of Occupational Titles (Tr. 32). The vocational expert testified that Plaintiff's past work was as an administrative assistant (sedentary exertion), bank teller (light exertion), and loan processor (sedentary exertion) (Tr. 32). The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of

7

Plaintiff: "the residual functional capacity to perform a range of medium work. . . [including] lift and carry and push and pull 25 pounds frequently and 50 pounds occasionally, can sit for 6 hours in an 8 hour day, and can stand or walk for 6 hours in an 8 hour day . . . [and] can frequently handle with the right upper extremity and must avoid concentrated exposure to humidity and wetness" (Tr. 68; *see also* Tr. 35). The vocational expert testified that such an individual could perform Plaintiff's past relevant work as identified above, as well as other representative medium and light exertion jobs (Tr. 35-37). The ALJ then asked if the individual would be able to work if she had other limitations that were not part of the ALJ's ultimate residual functional capacity determination but which included the recommended limitations from Dr. Beard, the vocational expert concluded that Plaintiff would not be able perform her past work with those limitations because it required frequent handling, fingering, feeling, and occasional pushing and pulling (Tr. 39). Plaintiff's counsel had no questions for the vocational expert (Tr. 40-41).

After reviewing the record, the ALJ found that Plaintiff had severe physical impairments of residual leg length discrepancy status post right femur fracture with surgery, and residuals of right radius and ulna fractures with surgery (Tr. 67; Finding No. 3). The ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed

8

impairment (Tr. 68; Finding No. 4). The ALJ found that Plaintiff's complaints of disabling limitations were not fully credible (Tr. 70). Finally, the ALJ found that Plaintiff had the residual functional capacity to do medium exertion work with additional postural, environmental and manipulative limitations (Tr. 68; Finding No. 5), including her past relevant work as an administrative assistant, bank teller and loan processor (Tr. 71; Finding No. 6). In the alternative, the ALJ also determined that an individual with the same residual functional capacity and vocational profile as Plaintiff could perform the representative light exertion position of teller position (utilities); and other unskilled positions including store laborer, lithography worker, and gate tender, existing in significant numbers in the national economy (Tr. 72-73). Thus, the ALJ found that Plaintiff was not disabled from her alleged disability onset date of August 17, 2012, through July 2, 2014, the date of the Commissioner's final decision (Tr. 73; Finding No. 7).

## IV.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g);

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Foster*, 279 F.3d at 353.

## V.

Plaintiff argues that the ALJ erred in formulating an RFC which disregarded Dr. Beard's proposed limitations which were favorable to her because they were, in fact, consistent with the medical evidence in the record and, thus, failed to properly assess and give weight to the medical opinions available in this matter. She relies on the decision in *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (1983), for the proposition that the ALJ should never disregard opinions of a consulting agency physician that are favorable to a claimant. *Lashley* does not cast so broad a net. Rather, the *Lashley* court criticized the ALJ's decision to disregard the claimant's own testimony concerning his mental status wholesale where one examining agency physician's concluded that there was no mental impairment but three other agency physicians' examinations and conclusions, in fact, corroborated the claimant's testimony about mental impairment.

The situation in this case is distinct. No one disputes that Plaintiff has conditions which result in pain and other symptoms to which she testified. The only dispute is whether that pain and those symptoms caused functional limitations so severe that she was unable to engage in any substantial gainful activity for a

10

continuous period of at least 12 months. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423(d)(1)(A). In this instance, while she testified that she experienced greater limitations than those included by the ALJ in the RFC, the ALJ relied on Plaintiff's own reports and those of others with respect to her activities of daily living, as well as objective medical evidence – including the observations of Dr. Beard – which could be understood to suggest fewer limitations than proposed by Dr. Beard in his assessment of Plaintiff's limitations.

Essentially, Plaintiff argues that the evidence could and should be weighed differently so as to reach a conclusion that she is disabled. However, "[i]n deciding whether to affirm the Commissioner's decision, 'it is not necessary that this Court agree with the Commissioner's finding, as long as it is substantially supported in the record.'" *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quoting *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 167 (6th Cir. 2009)). "Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Id*. at 855 (citations omitted). Regardless of whether the Court would have made the same findings in the first instance, the Court must affirm the ALJ's findings in this instance because they are supported by substantial evidence of record. *Id*.

A claimant's residual functional capacity is assessed by the ALJ between steps three and four and is "the most [a claimant] can still do despite [her] impairments." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1) & (5). An ALJ is required to "assess a claimant's residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. SSR 96-5p, 1996 WL 374183, at *2, 4-5. Similarly, a claimant's subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a); *see also* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record). While there is a limited burden shift to the Commissioner at step five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing his residual functional capacity limitations. *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . The claimant, however, retains the burden of proving his lack of residual functional capacity.").

Plaintiff argues that the ALJ could not possibly have given lesser weight to or rejected Dr. Beard's conclusion that claimant could only occasionally handle, finger, and feel on the grounds that it was inconsistent with his findings that the claimant's range of motion in her fingers was normal and that she was able to pick up coins with either hand without difficulty. Plaintiff cites to her 4/5 grip strength test performed by Dr. Beard and relies on his observation of early hypothenar eminence atrophy in her right hand, consistent with an ulnar nerve impingement and which affects the muscles of the palm that control the little finger. She urges the Court to recognize that these observations and results are consistent with her testimony that her "pinky finger" and the finger next to it are frequently numb, that she suffers from swelling in her hand, and has severe arthritis in both thumbs. That might be the case, but the observation and diagnosis of conditions which might reasonably result in the symptoms of which she complains does not mean that she is necessarily so limited in her functional abilities as to be disabled. Rather, the ALJ appropriately considered whether the conditions for which there was medical evidence and which, the ALJ concedes, resulted in pain and other limitations so limited her as to render her disabled. The ALJ reached a different conclusion from Plaintiff, but that does not make it incorrect from this Court's perspective. Ultimately, the Court concludes that it was not disingenuous of

13

the ALJ to give significant weight to the report from Dr. Beard but not to the limitations proposed by Dr. Beard on the grounds that they were not supported by objective findings.

The ALJ was under no obligation to accept the conclusions of the examining consultative agency physician, Dr. Beard, concerning Plaintiff's residual functional capacity and justifiably determined that Plaintiff retained the capacity to perform medium exertion work with additional non-exertional limitations consistent with the performance of her past relevant work and the representative positions as identified by the vocational, notwithstanding Dr. Beard's recommendation. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."). As "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R.§ 404.1527(e)(2)(i), the decision to give more weight to a reviewing state agency doctor over treating and examining doctors is, indeed, permissible. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

It follows that the ALJ did not err in relying on the testimony of the vocational expert in response to the hypothetical

14

question crafted on the basis of the RFC included in the decision, and the decision of the Commissioner is affirmed.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 11) is **DENIED;** and

2) that Defendant's Motion for Summary Judgment (DE 12) is **GRANTED.**

This the 31st day of March, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge